Next case is Elliott v. Archdiocese of NYEt Al. Mr. Neuberger. Thank you, Your Honor. May it please the Court, my name is Steve Neuberger, and together with my co-counsel Tom Neuberger, we represent the plaintiff appellant in this case, Mr. Brian Elliott. And I'd like to reserve two minutes for rebuttal, Your Honors. Granted. Now, at its core, this is an –  No problem, Your Honor. I just have one objection to what you said. You said you're speaking only for yourself. That's not true. Well, there's a second. It's a threesome. And a third, okay. Particularly since 54B says expressly determines. It's like, bang! Right. Your Honor, and I believe the issue about – I believe the Carter case addresses this issue, about the situation where a district court does not lay out things to the extent that is otherwise required by Rule 54B. It doesn't give the specificity. And I believe the Carter case explains that the failure of a district court to do so is not a jurisdictional defect. Yeah, but that's the failure to give the reasoning. Right. But this court never expressly determined that there was no just reason for delay. When this case came in and I discussed it with my law clerks, I said, I don't worry because you'll be pretty sure that somebody's going to go back to the district court and try to get an amended order or something. Guess what? I was wrong. At least I think I'm wrong. Am I wrong? Well, Your Honor, there were actually two orders entered by the district court. I know, but after we read the briefs, I thought, well, I don't think there's going to be a real 54B issue here because when the clerk raised the question, somebody's going to run back to the district judge or ask us to remand the matter so that it can be entered. But it never happened. Your Honor, I did not think of that, and I would expect that if I didn't think of it, I would expect that the defense did not think of it because I expect I probably would have gotten a phone call about it. Agreed, Your Honor. And if we go back to the district court, we go back to the district court and we have a trial against the individual perpetrator, a trial which we would ultimately have to repeat. No, I thought you'd go back to the district court and try to get the district court to give a proper certification and that you might make a motion in our court to remand the matter so that the district court could do it. But I was wrong. It happens. Your Honor, we clearly did not do that, and that is the state of the record as I stand here before this court. All right. And Carter does help you a little bit, but Judge Greenberg points out how it doesn't help you. What about Berkeley? I mean, Berkeley presents a problem, doesn't it? I'm sorry, Your Honor. Which case was Berkeley? It appears that the issue that we reserved in Berkeley is now presented here because the stipulation in order refers to 54B, but it doesn't contain the express determination. It does not, Your Honor, and I believe that the only way around that is to look at the order in the context of the order that it amended, which was the original order certified under 1292, which was another oddity because nobody took advantage of that and came here within 10 days. And, Your Honor, the rationale for that was originally the archdiocese had filed a motion with the district court at the time when only the archdiocese was out of the case. It wasn't a final judgment because the individual defendant remained and the Marist defendants remained. The archdiocese filed a motion. I was preparing my opposition to that motion when the district court issued its decision dealing with the Marist's motion for judgment on the pleadings, okay? Now, once that issue was decided, personal jurisdiction was completely out of the case, had been completely dealt with, as had conflict of laws. At that point, Your Honor, I was approached by the defense and they asked, would you still oppose our motion? I have no problem getting this issue up here sooner, excuse me, I have no issue getting the personal jurisdiction and the conflict of laws issue up here sooner rather than later because based upon the other trials we have done before the state of Delaware courts dealing with childhood sexual abuse, there is going to be overlap because one of the required subsidiary findings that must be made in a trial against an institution is whether the abuse by the individual perpetrator actually occurred. And there's various subsidiary findings, whether that abuse was a crime at the time and things of that nature. There would be overlap both on that liability aspect and on the damages aspect. With that understanding, with that background, I believe it would have been more efficient and ultimately Judge Robinson agreed. We actually had a telephone conference with Judge Robinson about a couple weeks or about a month before her certification order was entered. I believe Judge Robinson was aware of that. However, Your Honor, as I indicate in my papers, I believe that a lot of this also has to be viewed through the judicial emergency lens, which was going on in the District of Delaware for most of the last five or six years. It's now been resolved, but there is still that backlog. We've had a couple of issues before the District Court in that time, which have come up here on some unique procedural postures. A couple times ago when I was up here, Your Honor, the District Court had not allowed me to brief summary judgment but had ruled for me anyway. It violates the rules and everything like that, but the District Court judges have had to do what they've had to do to keep the cases moving, to keep justice flowing in the district. All of that seems to be an apologia for the error, but ratifying the error nonetheless it was. Your Honor, if the rule was not complied with, I have no yes is the short answer. And where do we end up? I mean, do we – Your Honor, I think – What if, assuming arguendo, what if the panel might have concluded that some jurisdictional discovery should have been taken or what if the panel might have concluded that New York law applies? I mean, would it be helpful for judicial efficiency to even opine on those or not if we don't have jurisdiction? Your Honor, I think what ultimately happens is we probably go back and we try to make sure that the proper procedure is followed before the District Court. Whether we end up back up here again in short order, that is certainly possible. Another possibility is – I mean, you all want to be here. That's sort of the frustrating thing to me, and I understand why it doesn't serve much purpose to try the case twice. Well, the other option, Your Honor, and I'm speculating a little bit now, at the time this case was the most advanced of all of what I'm going to call the foreign diocese cases filed under the Delaware Child Victims Act. Several cases before the Delaware Superior Court system where individual defendants have been – where individual defendants remain but the institutional defendants have been dismissed on personal jurisdiction grounds are on hold because most of the state court judges who've ruled on the issue, on personal jurisdiction, they have uniformly, on personal jurisdiction, said there is no jurisdiction. But here's the catch. Most all of them have relied upon this case, Judge Robinson's first – Judge Robinson's first opinion here in Elliott. What may ultimately end up happening, Your Honor, is one of those other cases may now be more advanced, and we may just take one of those cases up to the Delaware Supreme Court because it is now advanced to the point where if we can convince the Delaware – So this might be held in abeyance while Delaware continues to sort out  It may, Your Honor. I believe the catch, though, was because so many – I think one of the reasons that my office agreed that it made sense to get this case before this court sooner rather than later was that Judge Robinson's first opinion in this case was the foundation for most of the subsequent opinions by the Delaware Superior Court. I think ultimately the issue on jurisdictional discovery, and I do not mean to move off of the Rule 54B issue, but I think ultimately that issue, whether jurisdictional discovery should have been granted, I believe I've adequately covered that in the briefs, Your Honor. Factually under the complaint, the defendants knew my – the defendants knew my – excuse me, the institutional defendants knew my client was being abused. They knew Brother Galligan was abusing other boys. They knew about the trips to Delaware, and they authorized the trips to Delaware. That's all in the complaint. I believe that more than meets the test for jurisdictional discovery because ultimately all that goes into a ratification argument, and if the abuse is ratified, it's brought within the scope of a priest's job duties, and then the institutional defendants are on the hook under agency jurisdiction under the Delaware long-arm statute subsections, I believe it's three and one. I believe that issue is – it's adequately covered in the briefs, Your Honor. I think the main legal issue I had hoped to talk about today was actually the conflict of laws issue. But if we don't – in Steele Co. versus – I think it's Citizens for a Better Environment, Justice Scalia said to the court in the clearest language that the appellate court has to determine if it has jurisdiction over the court, and if it determines it doesn't, the only thing it can do is state that fact and dismiss. And, Your Honor, and I don't have a – I don't have another response to that other than what I have already said. I think what happened before the district court was a recognition of the emergency straits that the district was in. But if the Supreme Court says otherwise, if this court says otherwise, we're just going to go back, Your Honor, and whether we get enough – All right. Let's assume for a minute we have jurisdiction. I'm interested to hear what you think about the conflict of laws issue. And I think that's the central issue in this appeal, Your Honor, because ultimately it does not – ultimately personal jurisdiction does not apply to the Marist – excuse me, the personal jurisdiction part of the appeal does not affect the Marist defendants, but the conflict of laws issue affects everyone. Now, at its core, I think this appeal is about conflict of laws and the state of Delaware's sovereign ability to enact the strongest law in the nation in order to respond to a widespread problem which does not respect state borders. Now, under subsection B of the Delaware Child Victims Act of 2007, institutions are liable to victims who were sexually abused in the state of Delaware. Now, under the plain text of subsection B, if a child is abused in Delaware, the CVA applies to the institution which employed or controlled the abuser. That's the plain text. That's just what the statute says. As a result, on this conflict issue, this is not an issue of first impression for this court to decide. President Judge Vaughn of the Delaware Superior Court addressed this in the DeLuca 8 cases and resolved the issue. Conflict of laws was extensively briefed. I believe I put all of that contextual evidence into the record in the appeal. As I read what he said, he said if there's one act of Delaware and 50 acts elsewhere, you can sue for all 51 acts. I believe that is exactly what he's saying. But that doesn't shed any light on what state law applies. I think it does, Your Honor, because under the text of subsection B of the Child Victims Act, that's talking about the CVA applies. The CVA applies. That is the statute of limitations. It's a lot more detailed than the typical statute of limitations. But the CVA is a recovery. It brings back to life a claim that was – claims that were otherwise barred by the statute. It does. All they had to say was they could have put one simple sentence that said in Delaware law applies to any claims under the CVA. The legislature didn't say that. But by bringing it back to life via the CVA, it's saying that the Delaware statute of limitations applies. Correct. So that means those 51 acts are not time barred. Correct. But it doesn't shed any light on what substantive law. Your Honor, I think the distinction is one which we were fighting about before Judge Robinson a little bit in briefing when the Archdiocese first raised the issue. Judge Vaughn went a step farther. And under the facts of the DeLuca 8 cases, you can see why. In the Dingell case, which I think is the closest analogy of the DeLuca 8, Michael Dingell was a New York resident, never taken to Delaware, and my office argued that Delaware law, specifically the CVA, applied to his claims for various reasons, but that was our argument. Judge Vaughn, essentially I lost the DeLuca 8, I lost that summary judgment in the DeLuca cases on this issue. Judge Vaughn said, however, if that one act, if he had been taken across state lines into Delaware just one time, the CVA would apply and Delaware law would apply. As one looks at the appendix and sees what was actually briefed, argued, and the questions that were asked by Judge Vaughn at oral argument in that case, that three-, four-hour argument we had that day, that was the conflicts of law issue because conflict of laws had been specifically addressed in the briefing, explicitly in the Dingell case, implicitly and not in as much detail in the other six of the DeLuca 8 cases, which dealt with interstate child sex abuse. So I believe it does apply, Your Honor. But that would mean that every time a state came up with a statute that, quote, unquote, saved a particular claim, that that statute resolves the conflict of laws issue in whatever context the conflict of law issue arises. And that's not what the purpose of the CVA is, or in my hypothetical, whatever statute would be passed to revive a claim. But once the claim is revived, Your Honor, I believe under the CVA, Delaware law I think clearly on its face would apply to the acts of abuse occurring in Delaware. And under subsection B, which is also the institutional liability provision, Delaware law applies. I think the larger issue, which I had expected we would be fighting about a bit on appeal and we haven't thought about it in the briefing, was where Judge Vaughn went that step farther and said that not only does Delaware law apply to the acts which occurred in state under the text, under the plain text of subsection B, Delaware law also applies to the acts which occurred outside of the state. And I believe Judge Vaughn reached that conclusion because there could, I think, the subsection B can be read to be at least a little bit ambiguous or unclear on that issue. So Judge Vaughn then went to the legislative history and the contextual evidence. And when one looks at the legislative history and the contextual evidence, you see the problem that the Delaware General Assembly was trying to address. They wanted to be the toughest state in the nation, to be a trendsetter, to set the bar high for Delaware's fellow sister states. And the reason for that is, Your Honor, because if one in five children in America or in Delaware or in any state was suffering from a disease, a disease which had long-lasting consequences for the rest of that child's life through adulthood until the point that they die, there would be panic in the streets and schools would be closed. But one in five children, one in six boys, one in four girls, get sexually abused as children during their lives. And the state of the law across the nation, for the most part, has been that on the civil side, no one cares. The state legislatures haven't cared. Well, Delaware looked at that. There was a groundswell of community support. The media got on board. I don't think you need to convince us of the importance of the issue. I mean, we don't see unanimous legislation that often. So, I mean, clearly it's important and it was unanimous. But I believe that colors what Judge Vaughn was doing. Okay. When he went that extra step. Our position on appeal and the conflicts of law issue is, if you read subsection B, and this is conceded that the CVA, the Child Victims Act, is not your typical statute of limitations, which usually says two years. If you look at the California one from 10 years ago, it wasn't as long as this one either, I don't believe. The Delaware legislature, they chose their words carefully. I believe based upon the plain text of the CVA, subsection B specifically, which also applies, which is the institutional provision. Under subsection B, if the acts that occurred in Delaware get Delaware law, I believe that's the only, I believe that's a fair reading, but not only does it have to be a fair reading, the Delaware Supreme Court in the Sheehan Appeal said repeatedly, that the CVA should be liberally construed, broadly construed, because it is a remedial statute. The fact that the legislature agreed unanimously on that speaks to that issue, obviously. We'll hear you, we'll hear you on rebuttal. Thank you, Your Honor. Mr. Flynn. Good morning, and may it please the Court, Anthony Flynn on behalf of Defendants Below and Appellees, Archdiocese of New York, and Church of the Nativity of Our Blessed Lady. We are co-appellees with Mount St. Michael School and the Marist Brothers of the Schools. Our argument on their behalf will be presented by Ms. O'Connell. We've divided the argument not just time-wise, but issue-wise, which given the attention paid to the personal jurisdiction issue, may seem superfluous now, but I am going to address the personal jurisdiction issues after briefly addressing the appellate jurisdictional issue, and then Ms. O'Connell will address the choice of law argument. I must say on the appellate jurisdictional issue, I'm about as chagrined as I've been standing before a tribunal because the parties all having agreed, and we believe the district court having agreed, that under Rule 54B there was no just reason for delay given what was going to unfold in the wake of no appeal, no appeal regarding these appellants, meaning a trial involving Mr. Elliott only against the abuser, Brother Galligan, through motion practice, trial, post-trial motions, then only reaching the appeal to determine whether the archdiocese and these other non-institutional, non-resident defendants or appropriate parties would struck all the parties as being extreme, and the court, I would say, as being very inefficient, and therefore there was no just reason for delay. Whether the statement only in Paragraph 5 of the stipulated order suffices to be the express determination under Rule 54B, I would say it's our position that it does, but if it does not. What does it say? What's exactly it says? What you just gave us was the reason for allowing the appeal, but that's not. The next step is there could be a reason for allowing the appeal, but there might be a reason for a delay, a just reason. So it's a two-fold step. So what does it say about that there is no just reason? And does it use that term? It does not use that term, Your Honor. What it says is... And we don't see any good reason not to. I'm not saying it's got to be word for word, but it doesn't seem to even say that. It's only two sentences, so I'll read it to the court. The court and all parties agreed that it would be most efficient to hold a single trial after the resolution of the appeals, which plaintiff's counsel indicated that plaintiff would be pursuing, which is to say, this appeal. Plaintiff's counsel and counsel for Defendant Galligan agreed to a stay of the trial pending resolution of the appeals. I have to say that is it on the issue. Well, the clerk sent out the notice. Why didn't somebody say, you know, this is an issue? We ought to rectify this. I told my clerks at the time, I said, honestly, you put the point, it'll never happen. Guess what? As often happens, I was wrong. It did happen. Well, as Mr. Neuberger said, that did not occur to the parties to do so, but I would also say that query whether the district court retained jurisdiction to enter such an order. It might not have, but you can make a motion to remand to have it entered. Yes, we could have done that. And I can only say that the parties all being in agreement on what the order provided and what we all saw, we did not even discuss it, much less conclude that it was unnecessary. The experiment had three sides. I'm sorry? The experiment had three sides. Yes. And only two sides were in agreement. Right. I agree. But I would say that if the court concludes it does not have jurisdiction based on the inadequacy of the order, that is the end of the analysis by this court in terms of what to be done. And I'm particularly chagrined because the last time I was here, also as appellee, also on appeal from a summary judgment, which I won, I won here on the ground that there was no final order in the district court. And so the appeal was dismissed. So this is particularly... You specialize in the Pyrrhic victory. Yes. This might be the latest niche practice. Yes. It beats the Pyrrhic defeat, right? Which I'm going to need, apparently. But Mr. Neuberger is correct, I think. This was one of the first cases decided on this issue regarding the non-resident defendants. About 10% of the cases filed under the Child Victims Act were non-resident plaintiffs suing non-resident defendants in Delaware, all in the same theory, that on an occasional trip to Delaware, abuse occurred there, and therefore, that granted personal jurisdiction over those non-resident defendants. Now, Ms. O'Connell is going to address choice of law, but I do strongly urge the court that far from being very clear that there's personal jurisdiction, the law and the facts, as alleged in the complaint, are all the other way. In its brief, the appellant accuses the appellees of ignoring the facts, but reading the complaint, what are stated to be facts in the brief are really only conclusory allegations of law. And as to those contentions, the appellant, in fact, ignores what the law is. And the most salient point is, which actually Mr. Neuberger did here concede, is that every ruling in both state and federal courts on the precise jurisdictional, personal jurisdictional issue before this court has held that there is no personal jurisdiction over non-resident diocesan defendants in clerical sex abuse cases. But isn't it typical for jurisdictional discovery in these types of cases? I mean, the complaint alleges that your clients were aware of the abuse, either had actual and or constructive knowledge of the abuse, and they authorized the trips to Delaware. So the complaint does not allege that the defendants authorized the trips to Delaware. The complaint alleges that the trips to or through Delaware were part of the job duties of Brother Galligan, and that the defendants were aware that Galligan was abusing the plaintiff. You look in vain in the complaint for specific allegations of the Archdiocese of New York or the church or even the marriage for that matter, directing Brother Galligan to take the appellant on a trip anyplace and to abuse them there. And I would submit... There's no allegation of direction, but there's allegation of ratification, acquiescence. I mean, if they know, let me put it in more blunt terms. If they know that he's a pedophile and he's in their employ, and they continue to allow him to travel with youth across state lines, I mean, why under traditional agency principles wouldn't they be amenable to jurisdiction wherever the specific acts of abuse occur under... Let's assume there's no systematic and continuous ties that would make you amenable to general jurisdiction. Why wouldn't there be specific jurisdiction under an agency theory? First of all, the abuse of a child by, in this case, not a priest, but a religious brother, cannot have been within the scope of any agency or employment of him by the defendants. The complaint alleges that. It alleges no facts, by the way, to support employment of Galligan by at least my clients. But the law is clear. Numerous decisions under Delaware law, but also decisions including by the Eighth Circuit and the Fifth Circuit, that abuse by a cleric cannot have been within the scope of his employment by a diocese. How do you distinguish this case from Thompson? From which one? Thompson. In Thompson, which is the Archdiocese of Washington, a priest of that archdiocese allegedly taking the plaintiff to Delaware and abusing him there, you have a jurisdictional discovery now. You have before the court in Thompson two affidavits, elaborate affidavits, detailing with great specificity what knowledge the archdiocese had with respect to this priest and his activities, including such things as him having to check in when he was in Delaware with, actually in his particular instance, the police department and the fire department for whom he was charged. Just remind me, was there jurisdictional discovery in Thompson? Yes, it was granted, and that was ordered. That's what you have before you in the papers, but the case then settled after that. So there's no ruling on the merits of personal jurisdiction there. Right, but substantively, you have the affidavits there available, which obviously there was no opportunity here, but I guess my point is this. In Thompson, the assertion was, or the allegation was, that the archdiocese knew. That's the allegation here. What's the substantive difference between Thompson and this case? Because other facts before the court in Thompson were, for example, the allegation that the archdiocese had an ownership interest in the mobile home in Delaware where the abuse allegedly occurred, owned the car that was used by the priest to take the child to Maryland, and in addition, specific facts relating to that knowledge that the priest had to inform directly where he was living, for example, where he was going. You have no such facts alleged in this case. I would suggest that the jurisprudence of this court on jurisdictional discovery is, and the case is cited. What if he needed permission? What if Galligan needed permission to travel out of state? I mean, they say in the pleading, in the complaint, that it was authorized. Well, again, I would suggest... So why not get discovery about what does that mean? Did he have to get written permission? Did he have to call his superior? What does authorized mean? Who gave him the authority to leave New York and go to Delaware, especially with a minor child? Right. Again, I would suggest that that allegation, authorized, even if that is the allegation, that he was authorized to take this trip, is not a sufficient factual affirmant to justify jurisdictional discovery where the allegations in this complaint regarding agency and conspiracy are devoid of any facts to support a specific jurisdiction under the Delaware long-arm statute. That it would be a... You know, it would be discovery in search of a theory for personal jurisdiction as opposed to, as in the cases before this Court previously, on personal jurisdiction discovery, exploring factual disputes, pursuing specific facts identified in affidavits or documents to submit to the Court. I don't understand. You make it sound as if it would be onerous. I mean, it sounds like it'd be like one witness. Right. Did you authorize this? I knew nothing about it. Or did you authorize this? Well, I knew he was going. I didn't know he was going with a boy. Whatever. I mean, we're not talking about an onerous amount of discovery or this isn't the classic fishing expedition. We're talking about very, very focused. Yeah. Well, I would suggest it would be a fishing expedition. The affidavit submitted to the Court, in this case, sought the deposition of about six people, including the Archbishop of New York, the Provincial of the Marist Order. The Court could have narrowed it, of course, as the Court did in Thompson, actually. The Court, in its order permitting discovery there, was very specific. That could happen. We would certainly seek it to be as limited as would be appropriate. But why engage in what won't be a cost-free exercise to pursue discovery at the end of which there can be no personal jurisdiction? And we would submit. Why can there be no? Yeah, right. At the end, how do we know there can't be at the end? You're suggesting there are other facts in the record that preclude the exercise of jurisdiction. What are they? First of all, as the Court has noted, there is no allegations of any contacts with the state that would justify general jurisdiction under statute. It's not a general case. It's a specific case. Specific case. All you've got is the one. If they authorized, ratified, et cetera, this one trip that resulted in this one exercise of abuse, that's specific jurisdiction under traditional agency theory. I have to disagree with the Court under the cases cited even by the appellant. The ratification cases, for example, none of those cases involved a ratification after the fact by a principle of tortiousness. Because the ratification occurs in New York. Is that the argument? Yes. Okay. There would have to be some sort of ratification, some action in Delaware? The cases are clear. The non-resident defendant has to take some act or direct some act in the forum state. And we have no such allegation here even of such an act by the non-resident New York defendants in Delaware. I would say that, as I'm staring at the red light, that the appellant here both conflates the standard of review on a 12b-6 motion with the standard under 12b-2 and has failed to carry its evidentiary burden under 12b-2. At most, the appellant alleges that the defendants knew that Galligan was abusing children generally and plaintiffs specifically and authorized him to take plaintiffs on trips during which they should have known he would abuse the plaintiff. That may allege reckless or negligent conduct, actionable under New York law in New York. It does not, however, speak to whether Delaware courts have personal jurisdiction over those defendants. And again, both state and federal courts reviewing not just this theory but the identical allegations. The state court cases we cited to the court have the identical conspiracy and agency allegations in them because it's the same plaintiffs' counsel, it's the same complaint, and have been rejected uniformly. Therefore, we would respectfully submit the final judgment of the district court be affirmed. And I'm now going to turn to Ms. O'Connell to address choice of law. Thank you, Mr. Flynn. Thank you, Your Honor. Ms. O'Connell. Unless you have anything new to add, I don't feel like you have to address the jurisdictional issue. We may have beaten that horse to death, but I'll leave that to your discretion. Thank you, Your Honor. I appreciate that. May it please the Court, Penelope O'Connell on behalf of the Marist defendants, Marist Brothers of the Schools and Mount St. Michael Academy. Your Honor, contrary to what my adversary has represented this morning, the CBA is silent on a conflicts of laws analysis. And the district court correctly found that Judge Vaughn's bench ruling of October 5, 2009 has no bearing on this conflict of laws analysis that's before us today. The remaining cases before the judge that day beyond Dingell dealt with Delaware defendants, Delaware plaintiffs, and some instances of abuse that took place in Delaware and without Delaware. Or they had no instances of abuse in Delaware. The Dingell case itself, however, involved a New York plaintiff, a New York perpetrator, three Delaware defendants, and all allegations of abuse took place in New York, not Delaware. Ultimately, Mr. Dingell's claims were rendered invalid, as my adversary indicated, because, however, he could not claim that a crime had been committed against him in Delaware that would be recognized by the Delaware Code, thus allowing him access into Delaware under the CBA. What Judge Vaughn's ruling did was to require that a putative plaintiff had to show that a crime was committed against him in Delaware in order to get the door open to him under the CBA. But here we have that. The door's open in this case. No, Your Honor, the door is not open in this case, because, Your Honor... Well, you're correct. I mean, a crime is alleged... You're correct. I mistake. However, once the door is open, as in this case, as Your Honor indicates, his other claims could come in under the CBA, according to Judge Vaughn's ruling, because the threshold showing of criminal conduct had been there. However, the court still has to engage in the traditional conflict of laws analysis. What Judge Vaughn's ruling did was open the door to the putative plaintiff because he alleges a criminal act in Delaware. However, a conflict of laws analysis must still be undertaken by the court because the CBA did nothing to eviscerate a traditional conflict of laws analysis. But then the plaintiff in this case is left without a remedy. If we apply New York law, then the New York law, substantive law, says you're out of time, and through this very circular process, he's in court, and then he gets thrown out of court. No, Your Honor, I would disagree. The institutional defendants certainly would... would enjoy the benefit of New York law. However, the plaintiff appellant... Pardon me? Galligan wouldn't. Galligan wouldn't. But didn't the Delaware legislature realize that the Galligans of the world wouldn't have any money to pay the damages for the people that are abused? Well, I... That would be a rather hollow piece of unanimous legislation, wouldn't it? My understanding of the cause of the turmoil and hubbub surrounding the passage of the CVA is that the victims wanted to have justice against their abusers in court. They wanted to be able to confront their abusers and seek the justice that had eluded them for so long. Here, plaintiff below and the appellant can certainly have that day in court with Defendant Galligan, Your Honors. They want some money. Perhaps, but let's hope that justice is the real goal here, Your Honor. Well, is that how we define justice in the civil system, is through the payment of money damages? I would imagine that's true. However, plaintiff did happen to sue, in this case, entities that under New York law cannot be reached in the CVA. He still, however, can reach his abuser. I hate to be cynical, but when I was a state trial judge in the 70s, the plaintiff was offered the policy limits and she turned it down. The judge would prove defendant. And I asked her attorney, what does she want? The other attorneys were there. He said, she wants justice. Everybody groaned. I just didn't see lawsuits that way. By the way, she got no cause. Understood, Your Honor. This questioning about justice leads me to another point that I'd like to make here, that the district court below, Judge Robinson, rendered her well-reasoned opinion in this case in the midst of all of this media attention to the issues. And it was an emotionally charged time. And Judge Robinson clearly, concisely, and rationally addressed all of the questions, some of which you are asking of me as well. And it is our position, and we would ask this court to affirm her well-reasoned opinions because, obviously, they're well-reasoned, but also because the plaintiff is not left without remedy here. As I mentioned before, he can still address his accuser at trial. Thank you, Ms. O'Connell. Thank you. Thank you. Mr. Neuberger, rebuttal? Yes, Your Honor. Thank you. First, Your Honor, I would like to note for the record that if one reviews the legislative history, it would reveal that Mr. Flynn, on behalf of institutional clients and Ms. O'Connell's senior partner, Mr. Reardon, on behalf of institutional clients, testified against the enactment of the Delaware Child Victims Act before the legislature because it would be devastating to institutions. So just on the issue of that the CVA was only about... It begs the question as to what the legislation says, though, right? It does. And under subsection B, it applies to institutions. It does, though, in the plain text of subsection B of the CVA. I have it here if the court would like me to read it. Read it again, please. It's worth repeating, I think. For a period of two years following July 9th of 2007, victims of child sexual abuse that occurred in this state who have been barred from filing suit against their abusers by virtue of the expiration of the former civil statute of limitations shall be permitted to file those claims in the superior court of this state. If the person committing the act of sexual abuse against a minor was employed by an institution, agency, firm, business, corporation, or other public or private legal entity that owed a duty of care to the victim or the accused and the minor were engaged in some activity over which the legal entity had some degree of responsibility or control, damages against the legal entity shall be awarded under this subsection only if there is a finding of gross negligence on the part of the legal entity. Your Honor, this is the institutional provision. This provision was fought over for a long time in the legislature. I'm sorry, Your Honor. If we find that this doesn't fall within the, let's say we follow Delaware laws as you've suggested, and we find that the abuse does not fall within the scope of the employment of the priest involved, what does that do to your claim? Your Honor, I don't think it does anything, and here's why. Number one, the CVA encompasses institutions that do more than just employ an abuser. I would certainly agree that another comma or two in the text of subsection B would have been helpful on this issue, but the Delaware Supreme Court addressed this in the Jimmy Sheehan versus the Oblates decision approximately a year ago, which dealt with the CVA. And if one looks at that opinion, the Supreme Court says that the CVA applies to institutions which employed or controlled abusers. So it's not limited to the employment relationship. And I would readily agree that prior to the Delaware Supreme Court's decision in Sheehan, some Delaware state court judges in the Superior Court, Judge Scott specifically, who the Sheehan case had been in front of, had interpreted the CVA as being employment only. We had argued control at the Sheehan trial, and the judge had ruled against us. The fact that the Delaware Supreme Court said employed or controlled was consistent with our argument in that appeal, that the CVA subsection B encompassed more than just the employer-employee relationship. On that same issue, Your Honor, the reason that the Latin American Community Center, that the Boy Scouts, that organizations of that nature testified in the legislature as part of the legislative history related to the CVA was because it applied to more than just the employment relationship. And assuming that the Court is not familiar with the Latin American Community Center in Wilmington, it's volunteers for the most part there, Your Honor, volunteers who work with kids. But that's why they, for example, I believe had testified against the CVA, was the fear that even though they didn't employ most of their volunteers, that they would somehow be held liable. Now, Your Honor, the Court has touched on the issue about Judge Vaughn, and it is our position that this Court should defer to Judge Vaughn's decision. But I would like to just end on the personal jurisdiction, I'm sorry, on the appellate jurisdiction issue. I would like to make an oral motion to remand this matter today to the district court, with this court retaining jurisdiction as I have seen happen in previous cases under some different facts, of course, with the district court to rule on the issue within 60 days. And then the issue can be under submission to this court again with no further briefing unless, I wouldn't see the necessity for any further briefing, given that we've briefed the substantive issues, and the issue which the Court has flagged as significant as the red flag issue today is the issue of appellate jurisdiction. Unless the Court has a question for me, I can.  Thank you, Your Honor. And Mr. Flynn and Ms. O'Connell, appreciate your candor and the professionalism, and we will take this challenging matter under advisement. And also your motion will be as part of the record, and we'll take that under advisement as well. Thank you, Your Honor. Do you have a position on the motion, Mr. Flynn and Ms. O'Connell? I can't say I do, Your Honor. All right. You'd have to consult with the client. Okay. We will. And we'll be happy to advise the Court by letter. Please do. Great. Thank you. Thank you.